HILARY JULIEN EDWARD MAZE v. EQUITABLE LIFE INSURANCE COMPANY OF IOWA.[1]

February 3, 1933.

No. 29,117.

[1]Reported in 246 N. W. 737.

140

*Samuel P. Halpern,* for appellant.

*Doherty, Rumble, Bunn & Butler, Robert O. Sullivan,* and *Phineas M. Henry,* for respondent.

WILSON, CHIEF JUSTICE.

Plaintiff appealed from an order denying his motion for a new trial after a verdict had been directed for defendant.

The action is to recover 23 disability instalment payments under a life insurance policy issued to plaintiff by defendant with a disability rider attached. The contents of this rider is the sole subject of our present consideration. The annual premium on the life policy was $133.90, and the annual premium on the disability rider was $24.80. The policy was issued September 24, 1928.

Through the rider defendant agreed, upon due proof being furnished, that the insured had become

"totally disabled by bodily injury or disease so that he will thereby be permanently, wholly, and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that

such total disability has then existed for not less than sixty days * * * it will, during the continuance of such disability * * *

"(a) Waive the payment of the premium * * *

"(b) Pay to the insured $100.00 each month."

The rider further provided:

"If proof satisfactory to the Company is furnished that said disability results from mental incapacity, payment may be made to the wife of the insured or any beneficiary, and the Company will be discharged from all further liability on account of the payments so made.

"The waiver of premium shall begin as of the anniversary of the policy next succeeding the date of the commencement of such total disability, and the monthly payments shall begin as of the date of the commencement of such total disability, provided, however that in no case shall the waiver of premium begin as of an anniversary, nor shall any monthly payments begin as of a date more than six months prior to the date of receipt of the required proof.

* * * * * *

"The Company may at any time and from time to time, but not oftener than once a year, demand due proof of such continued disability, and upon failure to furnish such proof, or if it appears that the insured is no longer wholly disabled as aforesaid, no further premiums shall be waived nor income payments made.

"In addition to and independently of all other causes of total and permanent disability, the entire and irrecoverable loss of the sight of both eyes or of the use of both hands, or of both feet, or of one hand and one foot, shall be considered as constituting total and permanent disability within the meaning of this provision."

For a period of 23 months, from about June 27, 1929, to about June 1, 1931, plaintiff by reason of an infirmity was totally disabled. On October 19, 1929, he filled out and gave to defendant proof of disability blanks furnished by defendant and thereby made claim for disability benefits on the basis that he was totally and permanently disabled since June 30, 1929, such disability then

having existed for more than 60 days. It is conceded that during said 23 months plaintiff was totally disabled. The difficulty is whether such disability was permanent. Plaintiff claimed in his sworn statement that it was. At the time when he furnished such statement neither he nor his doctor knew how long his disability would continue. About 19 months later, on or about June 1, 1931, the disability had ceased, and soon thereafter plaintiff resumed his business as a dentist. This action was commenced about October 1, 1931.

The theory of the plaintiff is that the conceded total disability, which had continued for more than 60 days and continued to and existed at the time he made such proof of claim for disability benefits and was then of an indefinite duration, was permanent within the language of the policy. This defendant denies and suggests that since the disability ceased before the commencement of this action plaintiff cannot recover upon the theory of total and permanent disability within the language of the policy.

A literal construction of the words "totally disabled  *  *  *  so that he will thereby be permanently, wholly, and continuously prevented from engaging in any occupation," etc. would necessarily preclude plaintiff's recovery.

It may be noted that the words "totally disabled" when used in such a policy are not to be literally construed so as to mean a state of absolute helplessness, but rather a state of inability to do all the substantial and material acts necessary to the carrying on of the insured's calling in substantially his customary and usual manner. 79 A. L. R. Anno. 857. This is recognized as the liberal rule of construction which is followed in Minnesota. Carson v. New York L. Ins. Co. 162 Minn. 458, 203 N. W. 209. In other words, under such liberal construction, total disability to engage in any occupation or work for compensation or profit does not mean that the insured person must be wholly helpless. He may be able to perform some parts of an occupation, yet he may be held to be totally disabled unless he is able to perform the substantial or material parts of such gainful occupation or work with reasonable con-

tinuity. Wilson v. Metropolitan L. Ins. Co. 187 Minn. 462, 245 N. W. 826. This, however, is important in this case only as indicating the tendency of the court toward liberal construction.

Defendant says that plaintiff's disability was temporary, which is the antithesis of permanent. Permanent usually means forever, an absolute perpetuity, something continuing in the same state or without any change that destroys form or character, something lasting, something to remain as it is, an antonym to temporary.

We are of the opinion, however, that the meaning of the word "permanent" as used in a contract of the character now before us is to be construed according to its nature and in its relation to the subject matter of the contract. Penn Mut. L. Ins. Co. v. Milton, 160 Ga. 168, 127 S. E. 140, 40 A. L. R. 1382; Texas & P. Ry. Co. v. Marshall, 136 U. S. 393, 10 S. Ct. 846, 34 L. ed. 385; Mead v. Ballard, 7 Wall. (U. S.) 290, 19 L. ed. 190.

From the standpoint of plaintiff it may be noted: Plaintiff bought this contract anticipating a substitute monthly income of $100 per month in case he became disabled. We perhaps have assumed as much in Carson v. New York L. Ins. Co. 162 Minn. 458, 203 N. W. 209.

Defendant agreed to waive payment of premiums and make the monthly payments under specific conditions, and when? "During the continuance of such disability." This language does not indicate that defendant meant to say in its policy that the disability must last forever, to the end or for life. But it would seem from this and other provisions that defendant rather contemplated that if plaintiff was so totally disabled for a period of 60 days—apparently a waiting period of that length—the insured would be in a position to claim permanent disability.

But there is another still more persuasive provision in the policy which reads:

"The company may at any time and from time to time, but not oftener than once a year, demand due proof of such continued disability, and upon failure to furnish such proof, or if it appears that the insured is no longer wholly disabled as aforesaid, no further premiums shall be waived nor income payments made."

This clause carries the implication that the insurer contemplated that disability might terminate, in which event the waiver of the payment of premiums would come to an end, and the insured would have to begin to pay premiums again. It contemplates that the disability, proof of which would entitle the insured to the benefits provided, might not last forever but might end, and after the cessation of the total disability the benefits would cease. This provision must also be read in connection with the words which provide for the $100 monthly payments "during the continuance of such disability." As said in Penn Mut. L. Ins. Co. v. Milton, 160 Ga. 168, 172, 127 S. E. 140, 142, 40 A. L. R. 1382:

"This language clearly indicates that the insurer meant that the total disability, on proof of which it would grant the benefits named, was not one which might last during the entire life of the insured, but one which might end prior to his death."

In the Penn case, 160 Ga. 168, 127 S. E. 140, 40 A. L. R. 1382, the court held that a disability which had lasted 16 months and from which the insured then recovered was a permanent disability under a policy containing substantially the same language as here. Perhaps the only difference was that in that case the first monthly payment was payable six months after the receipt of the proof of total and permanent disability.

The Penn Mutual case, 160 Ga. 168, 127 S. E. 140, 40 A. L. R. 1382, supports plaintiff's position. The reasoning therein seems sound, yet it has been criticized. Grenon v. Metropolitan L. Ins. Co. 52 R. I. 453, 161 A. 229.

Plaintiff's contention also finds support in Eastep v. N. W. Nat. L. Ins. Co. 114 Neb. 505, 511, 208 N. W. 632, 634, wherein the court in reference to a disability said:

"In the event that what was once regarded as a total permanent disability should prove to be a total temporary disability the provision of the policy should be construed to render the company liable for that period only."

The theory of plaintiff finds support in Wenstrom v. Aetna L. Ins. Co. 55 N. D. 647, 215 N. W. 93, 54 A. L. R. 289.

In Hawkins v. John Hancock Mut. L. Ins. Co. 205 Iowa, 760, 218 N. W. 313, 315, the court held in relation to a policy such as this that a disability annual premium of $3.84, for which the insurer agreed to pay ten per cent of the face of the policy annually (and payments of $100 per month in the instant case was ten per cent) and total relinquishment of annual premiums, bear out the interpretation that the ordinary and common risk of temporary disability which happens to most people was not in mind. The court cited with approval the Ginell case [237 N. Y. 554, 143 N. E. 740, adopting dissenting opinion in 205 App. Div. 494, 200 N. Y. S. 261], Shipp case [146 Miss. 18, 111 So. 453], and Leduc case [65 Quebec Official L. R. (1927) 320]. It may be important to note that in the Hawkins case, 205 Iowa, 760, 218 N. W. 313, the insured had recovered when he made his proof, and that fact was disclosed therein. This circumstance and the small disability premium were the basis for the opinion.

It is interesting to note, however, that the opinion in the Hawkins case, 205 Iowa, 760, 218 N. W. 313, was filed March 13, 1928, and that the same court filed an opinion in Kurth v. Continental L. Ins. Co. 211 Iowa, 736, 234 N. W. 201, January 13, 1931, wherein the court used considerable language tending to support the position of plaintiff in the instant case though the Hawkins case, 205 Iowa, 760, 218 N. W. 313, was not mentioned. In the Kurth case, 211 Iowa, 736, 737, 234 N. W. 201, 202, the court was called upon to deal solely with the "total and permanent disability" insurance provided for in the contract. The position of the insurer there was much the same as the insurer in the instant case, and the court in part said [211 Iowa, 738]:

"If the construction sought to be placed on the policy by the defendant Insurance Company should prevail, the waiver of premiums would then mean nothing; secondly, the instalment payment provisions would mean nothing, as they, if any there be due, are to be paid to the insured himself."

The policy in the Kurth case, 211 Iowa, 736, 738, 234 N. W. 201, specified that a disability for 60 days was "presumably" permanent

(this word is not in the policy now before us). The court continuing said. [211 Iowa, 738]:

"The fact is that the use of the word 'presumably' in connection with 'permanent' is sufficient to destroy the idea that it was intended that the absolute certainty of the permanency and the absolute certainty of the continuance of the disability should prevail. The word 'presumably' is a comparative adverb, as used in this instance, and by its very nature precluded the idea of an absolute, lasting, or fixed condition. Its meaning is: fit to be assumed as true in advance of conclusive evidence; credibly deduced; fair to suppose; by reasonable supposition or inference; what appears to be entitled to belief without direct evidence. * * * By the employment of this word 'presumably,' it is clear that there might be some question, at present or in the future, concerning the permanency and continuancy of the described disability. It next follows that the phrase 'and that he will be wholly and continuously prevented thereby' must be construed as not implying absolute certainty, but as a reasonable and fair presumption that 'he will be wholly and continuously prevented thereby from pursuing any gainful occupation.' The words, 'permanently' and 'continuously,' standing alone, would imply that the disability was a lasting and absolutely fixed condition; but when these words are taken in connection with the language used in other provisions of the contract, the only fair construction to be placed on such words is, not that the disability which has existed during 60 days must exist forever, but that such disability has existed for a period of not less than 60 days and by a fair presumption will continue for a future period. * * * To sustain this point, we quote another clause of the contract, as follows: 'After accepting proofs of disability under this policy the company shall have the right at any time thereafter, but not more frequently than once a year, to require proof of the continuance of such disability; and if the insured shall fail to furnish such proof, or if it appears that the insured has so far recovered as to be able to engage in any gainful occupation, the company's obligation to pay the premium and instalments shall cease.'

"By the insertion of the foregoing clause in the contract, it is obvious that the disability by which the benefits may accrue and become obligations of the company is not absolutely expected to be absolutely permanent and absolutely continuous and to absolutely prevent the insured during his after lifetime from engaging in any gainful occupation; because this insertion was intended to govern when and if such presumably permanent disability might be removed by some means or other, and the company desired what benefits it might have by reason of such removal."

It seems to us that the Kurth case, 211 Iowa, 736, 234 N. W. 201, is strong authority in support of the contention of the plaintiff.

In Metropolitan L. Ins. Co. v. Noe, 161 Tenn. 335, 31 S. W. (2d) 689, the disability provisions of the policy provided for payment in case of total and permanent disability, wholly incapacitating, etc. The court said [161 Tenn. 337]:

"It is apparent that the policy undertakes to pay a monthly sum for disability only when a condition of permanent total disability has been shown to exist. However, the showing requisite to set in motion the monthly instalment payments under the disability clause need not be absolute,—such as would be afforded by death. The disability clause contemplates continuance of life, and while there is life there is hope, however faint."

The court then pointed out the express provisions in the policy for discontinuance of the payments [161 Tenn. 338] "in the event of the recovery of the employe from such disability before all instalments have been paid," in which event, "payment of such instalments on account of such employe shall cease." It was there held that the policy contemplated the accrual of liability for instalment payments under conditions which may prove temporary only, although at the time indicative of permanency.

We are of the opinion that the authorities support the conclusion that in insurance parlance, when used in such a policy as now before us, the words "totally and permanently disabled" contemplate a disability at the time of the continuance of the claim, which rea-

sonably satisfies a fair and impartial mind that the insured is then totally disabled and may reasonably be expected to continue in such condition for at least an indefinite period of time. The vital question thus involved must be determined on the evidence in each individual case. It necessarily follows that such a policy contemplates the accrual of liability for instalment payments under conditions which may eventually prove temporary only, although at the time indicative of permanency. As said in the Hawkins case, 205 Iowa, 760, 763, 218 N. W. 313:

"Fairness to the policyholder requires that reasonable evidence of permanency be accepted, and the benefit paid, so long as such apparent permanency exists; but that, if it later appears that the seeming permanent condition is not such, then the company shall be no longer held to continue paying benefits."

Defendant is not without support for its position. See dissenting opinion in Ginell v. Prudential Ins. Co. 205 App. Div. 494, 200 N. Y. S. 261, which on appeal was made the prevailing opinion; 237 N. Y. 554, 143 N. E. 740. However, aside from standing on the literal meaning of words, the court points out that the language of the policy there involved showed that for the disability insurance an additional premium of 44 cents a year was paid, and the court seemed to conclude therefrom that it could not have been expected by the parties that the risk of liability under this clause in the policy was considerable. Apparently the court considered that the premium was so small that the parties never contemplated any greater risk than that involved under the theory of the insurer. But the fact that in the instant case the additional premium was $24.80 per year tends to diminish the force or weight of the Ginell case, 237 N. Y. 554, 143 N. E. 740, as an authority in this case.

In Shipp v. Metropolitan L. Ins. Co. 146 Miss. 18, 111 So. 453, the strict rule of construction was applied; likewise in Leduc v. Metropolitan L. Ins. Co. 65 Quebec Official L. R. (1927) 320, wherein it does not appear that the policy contains any such conditions as are now before us. The only question there was whether an

illness for five months and ten days was "absolute and permanent," and the court answered in the negative.

In Metropolitan L. Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852, the language used supports the defendant. However, it does not appear in the opinion whether at the time the insured made his proof he had recovered. Nor does it appear that at the time of making claim his illness and disability were of an indefinite duration, nor that they would continue. It is possible that the insured had fully recovered before making his claim; whereas as here stated by counsel for appellant:

"In the case at bar, the evidence shows conclusively that at the time of making claim for total and permanent disability benefits, the assured was suffering from an infectious arthritis, which was totally disabling, and that such disability was of a lasting and continuous nature and of indefinite duration, and that it was difficult to determine when and if the insured would ever recover therefrom. His total disability for 20 months thereafter demonstrates its permanency. Therefore, whether or not at that time he was totally and permanently disabled was properly a question of fact for the jury to determine, notwithstanding his ultimate recovery."

It seems unreasonable to put a construction upon such a policy burdening the insured suffering from a disability to establish by evidence that such a disability is to last forever. Such an undertaking is not only in itself a discouraging one but a difficult one, even though in truth and in fact such disability may never yield to treatment and time may prove that there can be no recovery. At best such proof can raise an issue upon opinion evidence only, and it would seem that no policy should be construed to put such difficult obstacles in the way of the policyholder unless the language clearly expresses such an intention so that there can be no doubt that the insured so understands his contract when he enters into it. If that is the intention at the time a policy is written, the company should be able to couch it in such simple language that there can be no misunderstanding. Hence doubtful construction must be resolved against the insurer who writes the policy and who

150

thoroughly understands the nature of its contractual obligation. In contracts the intention of the parties rather than the words actually used by them should be considered.

The insured could hardly expect to recover in Brod v. Detroit L. Ins. Co. 253 Mich. 545, 547, 235 N. W. 248, as indicated by language used in the opinion, to-wit:

"Plaintiff made no showing at the trial, by medical opinion or otherwise, of the probable duration of his total disability, nor did he present testimony that he had made such showing in his proof of claim. While it is true that the time a disability will run cannot be foretold with certainty, there are possibilities and probabilities in connection with injuries and diseases which may be measured more or less accurately by standards based upon experience and which may be shown in evidence. Plaintiff's proof failed entirely in the essential that total disability would 'presumably' be for life, as required by the policy."

In the Brod case, 253 Mich. 545, 235 N. W. 248, the policy provided for payment of disability benefits in the event the insured became totally and permanently disabled for life. Nor did the policy contain such provisions as we have emphasized in the instant case.

The cases following the strict rule of construction say that a temporary total disability, even for a year, followed by only a partial disability, is not within the benefit. Ginell v. Prudential Ins. Co. 237 N. Y. 554, 143 N. E. 740; Brod v. Detroit L. Ins. Co. 253 Mich. 545, 235 N. W. 248; Metropolitan L. Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852.

In Home Benefit Assn. v. Brown (Tex. Civ. App.) 16 S. W. (2d) 834, the policy did not provide for monthly instalments but for the payment of a lump sum of $1,500 if assured by accident became totally and permanently disabled. There was no provision for continuance of disability.

Defendant also relies upon Conley v. Pacific Mut. L. Ins. Co. 8 Tenn. App. 405.

In Ohio Nat. L. Ins. Co. v. Stagner, 223 Ky. 571, 4 S. W. (2d) 364, the court, under a policy containing a number of provisions such as

now before us, held that the proof had to show that the disability must be for life. It did not contain such words as "during disability." There the policy also contained the words "as presumably to be permanently" disabled. It however only required plaintiff to show facts from which a presumption would arise that his disability was a permanent condition.

The literal language of the court in Grenon v. Metropolitan L. Ins. Co. 52 R. I. 453, 161 A. 229, strongly supports the strict construction urged by defendant. It may be noted, however, that in that case the proof of claim disclosed that the disability was not permanent. The court was discussing a temporary disability.

Likewise in Lewis v. Metropolitan L. Ins. Co. (La. App.) 142 So. 262, a late case, the court used forceful and vigorous language, which from the standpoint of the strict and technical rule of construction is very persuasive. But again in that case the insured was paying an annual premium of only 57 cents, which in a measure is indicative of the kind of insurance that the parties must have had in mind when they made the contract, the relation between the premium and the consequences as hereinbefore mentioned. It may also be stated that in the Lewis case, (La. App.) 142 So. 262, the proof of disability negatived permanent disability.

The policy before us carries no presumptive period, but it does carry a waiting period of 60 days, which for all practical purposes should equally serve the defendant. It has the benefit of the disability having existed for 60 days before it may become the foundation for a claim of total disability.

In the oral argument defendant advanced the claim that the words "during the continuance of such disability" and clauses of similar import had reference to the paragraph in the rider providing that payments could be made to the wife of one whose "disability results from mental incapacity." But we see no justification for this contention. The policy does not so read, and nothing has been pointed out indicating that the parties so intended to limit the application of this provision. Indeed there is little, if anything, to support the reasonableness of such distinction.

If an insured, under such a policy as here involved, has been totally disabled for a period of 60 days, and proves by competent evidence the nature and character of such disability, as far as is known or may reasonably be ascertained, and that it would probably or may continue for life, or that its duration may reasonably be expected to continue indefinitely, he is entitled to recover instalment payments as one who is totally and permanently disabled. Subsequent recovery, even before trial, does not destroy the insured's cause of action, though it terminates the accrual of subsequent instalment payments thereunder. The insurer is not required to pay after the disability ceases, and it is adequately protected by the language of the policy. Total and permanent disability under such a policy contemplates a physical or mental condition as a general rule at the time of the making of the claim, but not necessarily confined thereto, and relating to the period of the duration of such alleged disability. Each case must stand upon its own merits, and the evidence usually presents a question of fact.

Such is our conception of what the parties to such a contract must have had in their minds. It provided that the insured should have the benefit of his seeming condition while it continued, but it protected the insurer against payments if the condition proved, as possible, to be temporary. A fair interpretation of the policy is that the parties intended payment to be made as long as an apparent permanency lasted; and that if time proves such seeming permanent condition is not such, then payments cease.

We adhere to the former holdings of this court in following the liberal rule of construction which is supported by the Penn case, 160 Ga. 168, 127 S. E. 140, 40 A. L. R. 1382, and other authorities. In the instant case plaintiff's evidence was sufficient to support a finding of the jury that he was totally and permanently disabled within the meaning of the policy at the time when he made his claim. That was sufficient to take the case to the jury.

The result of our construction of this policy is equitable and just and is the consequence of construing the word "permanent" according to its nature and its relation to the context and the sub-

ject matter of the contract. Otherwise the purpose of the policy to provide a substitute income is defeated, and a reason is created to prompt the insurer to procrastinate in the consideration of the claim and delay the trial of the cause in the hope that the insured's recovery before trial might relieve it from payments. Any other conclusion would mean that some of the phrases and provisions in the policy were useless, meaningless, and inserted without a purpose.

Reversed.

[1]Reported in 246 N. W. 674.