## WILLIAM E. BAHNEMAN v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.[1]

December 7, 1934.

No. 30,092.

*O'Brien, Horn & Stringer,* for appellant.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *George W. Jansen,* for respondent.

[1]Reported in 257 N. W. 514.

Julius J. Olson, Justice.

Plaintiff appeals from a judgment entered pursuant to findings which have for their basis an agreed statement of facts.

Action was brought to recover upon a policy of insurance issued by defendant which provides for certain payments to be made in the event the insured should suffer "total and permanent disability" as limited and defined in the policy contract.

The policy provided that the company would pay $2,000 immediately upon receipt of due proof of death of the insured while. the policy was in force, to a named beneficiary, the insured retaining the right to change such. Another paragraph provided that in the event of death by accident a further sum of $2,000 would be paid. The difficulty in the instant case arises out of the following policy provisions, appearing upon the first page thereof:

"Total and Permanent Disability Benefits

"Monthly Income . . . Ten Dollars Per Month For Each $1,000 . . . of the Face Amount of Insurance, payable at the Home Office of the Company to the Insured in event of total and permanent disability before age 60, subject to the provisions as to Total and Permanent Disability contained in the Policy.

"Waiver of Premiums in event of Total and Permanent Disability as hereinafter provided."

The "disability benefits" and "monthly income" provisions referred to in above quotation are defined and limited on the second page of the policy and read thus:

"Provisions as to Total and Permanent Disability:

"Waiver of Premiums, Monthly Income to the Insured.

"Disability Before Age 60: Waiver of Premiums—Monthly Income to the Insured.—If the Insured shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he * * * is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his * * * lifetime, and if such disability shall occur at any time after the payment of the first

premium on this Policy, while this Policy is in full force and effect and the Insured is less than sixty years of age, and before any non-forfciture provision shall become operative, the Company, upon receipt of due proof of such disability, will grant the following benefits:

"(1) WAIVER OF PREMIUMS—The Company will waive the payment of any premium or premiums the due date of which, as specified on the first page hereof, shall occur after receipt by the Company of said proof of such disability.

"(2) MONTHLY INCOME TO THE INSURED.—The Company will, in addition to waiving premiums, pay to the Insured the Monthly Income specified on the first page hereof under the heading 'Total and Permanent Disability Benefits.' The first monthly payment shall be made immediately upon receipt by the Company of due proof of such disability and subsequent payments shall be made on the first day of each month thereafter. Interest due on any indebtedness under this Policy may be deducted from such monthly income payments.

"Such waiver of premiums and such monthly payment shall be additional to all other benefits and obligations under this Policy and the Policy shall be continued in force and the amount of insurance, less any indebtedness, shall become due and payable at death or maturity in the same manner as if the Insured had actually continued to pay the premiums.   *   *   *

"RECOGNIZED DISABILITIES.—Without prejudice to any other cause of disability, the Company will recognize the entire and irrecoverable loss of the sight of both eyes, or loss by severance of both hands above the wrists, or of both feet above the ankles, or of one hand and one foot, as total and permanent disability under this Policy.

"PROOF OF CONTINUANCE OF DISABILITY.—Notwithstanding the acceptance by the Company of proof of total and permanent disability, the Insured, upon demand by the Company from time to time, but not oftener than once a year after such disability has continued for two full years, for the purpose of verifying that such disability is actually permanent and not temporary, shall furnish

due proof that he * * * actually continues in the state of dis- ability defined above; provided, however, that such demand shall not be made in the case of the 'Recognized Disabilities' specified above, other than the loss of the sight of both eyes. In case of failure to furnish such proof, no further premiums shall be waived and no further monthly payments shall be made on account of such disability, but any insurance then remaining under this Policy shall be continued in force subject to the payment by the Insured of any premium or premiums, based on such insurance, the due date of which premium or premiums, as specified on the first page hereof, shall occur thereafter."

The policy was issued October 2, 1925, insured being then less than 15 years of age. All premium payments were seasonably made. The remaining facts are briefly yet adequately found by the trial judge as follows:

"5. That plaintiff duly furnished to defendant proofs of loss arising from the disability which is the subject of this action, and that plaintiff demanded payment of the disability benefits from the defendant, and that defendant refused and continues to refuse to pay to plaintiff the same.

"6. That from September 1, 1931, until July 31, 1932, inclusive, plaintiff was totally disabled as a result of pulmonary tuberculosis to such an extent that he was rendered wholly unable to engage in any occupation or perform any work for any kind of compensation of financial value.

"7. That during the said period it appeared that the said total disability might reasonably be expected to continue for an indefinite period of time, and that plaintiff might be permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his lifetime. However, the nature of plaintiff's illness was such that it was impossible to state with absolute certainty that plaintiff would or would not be so disabled.

"8. That subsequent to July 31, 1932, it appeared reasonably probable that plaintiff would not be totally disabled for an in-

definite period of time, but that plaintiff would recover from the said disability.

"9. That by June 5, 1933, plaintiff was no longer totally disabled, and was not disabled on June 14, 1933."

Upon these findings the court concluded that "plaintiff was not totally and permanently disabled within the meaning of the policy" and ordered that judgment be entered for defendant with costs. Plaintiff moved for amended conclusions of law so as to grant him the sum of $220 with interest and costs or for a new trial. The motion having been denied, judgment was entered for defendant, and this appeal followed.

The parties stipulated that if "a trier of the facts could find that plaintiff during the period from September 1, 1931, to July 31, 1932, was totally and permanently disabled within the meaning of the policy sued on in this action, then judgment shall be entered for plaintiff for $220 * * * with interest thereon from and after July 31, 1932, together with the costs and disbursements of this action."

The learned trial judge in his memorandum states the problem confronting us thus:

"Counsel for plaintiff relies largely in his contentions in behalf of plaintiff upon the decision in Maze v. Equitable L. Ins. Co. of Iowa, 188 Minn. 139, 246 N. W. 737, 739, while defendant banks upon Ginell v. Prudential Ins. Co. of America, 237 N. Y. 554, 143 N. E. 740, for a decision favorable to defendant, claiming the same is on all fours with the instant case, and so it is."

The case was tried shortly after the Maze decision. Evidently that case was in the minds of court and counsel when the stipulation of facts was entered into and findings made. We have quoted rather extensively from the record the various policy provisions. In that case as in this there were provisions with respect of waiver of premiums, of monthly income to the insured, of recognized disabilities, and of proof of continuance of disability. There, as here, the disability had ceased when the action was commenced. The facts in the two cases are almost identical. The distinction arises

by virtue of the phrase "during the remainder of his lifetime" appearing in the instant case in that part of the policy which defines total and permanent disability and which does not appear in the Maze case. In the Maze case [188 Minn. 140] it was necessary to recovery to make proof that the insured was "permanently, wholly, and continuously" prevented from engaging in any gainful occupation. It is strenuously urged in behalf of defendant that this qualifying phrase must be given force and effect and that if this be done it affords a clear distinction justifying the conclusion reached by the trial court. But, as stated in the Maze case [188 Minn. 143]:

"There is another still more persuasive provision in the policy which reads: 'The company may at any time and from time to time, but not oftener than once a year, demand due proof of such continued disability, and upon failure to furnish such proof, or if it appears that the insured is no longer wholly disabled as aforesaid, no further premiums shall be waived nor income payments made.' This clause carries the implication that the insurer contemplated that disability might terminate, in which event the waiver of the payment of premiums would come to an end, and the insured would have to begin to pay premiums again."

Here the provision of the policy on this phase is as follows:

"In case of failure to furnish such proof [of continuance of disability], no further premiums shall be waived and no further monthly payments shall be made on account of such disability, but any insurance then remaining under this Policy shall be continued in force subject to the payment by the Insured of any premium or premiums, based on such insurance, the due date of which premium or premiums, as specified on the first page hereof, shall occur thereafter."

If this part of the contract be given force and effect, as it necessarily must, what can be said of the controlling effect of the phrase "during the remainder of his lifetime"? The two provisions are inconsistent. Harmony is impossible. If the policy were to cover only those disabilities which are certain to be permanent, then

where would be the necessity for proof of "continued disability"? Furthermore, in the instant case the stipulation reads and the findings are that between September 1, 1931, and July 31, 1932, both dates inclusive, "plaintiff was totally disabled as a result of pulmonary tuberculosis to such an extent that he was rendered wholly unable to engage in any occupation or perform any work for any kind of compensation of financial value." In the seventh finding of the court the insured is found to have been totally disabled during the period just mentioned and that such total disability "might reasonably be expected to continue for an indefinite period of time, and that plaintiff might be permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value *during the remainder of his lifetime.*" (Italics ours.) The effect of the phrase "during the remainder of his lifetime," if literally accepted, destroys the policy in so far as disability under this policy provision is concerned. Disability would have to be established with demonstrable certainty. Clearly, that was not contemplated or the "proof of continuance of disability" provision would not have been written. If this boy had suffered with a disabling ailment over a period of 10 or 20 years and then recovered, would not the same construction as now contended for by defendant absolve it from liability? Any such construction is abhorrent to reason and cannot be given such effect. Insurance companies prepare, except as limited by statute, their own policies. They are thoroughly capable of expressing the terms thereof in such language as to leave no doubt of what was intended. They should not be permitted to escape liability where such flagrant inconsistencies exist. The Maze and Ginell cases mentioned by the trial court are not in harmony and cannot be harmonized. The Ginell case was considered at the time of the writing of the Maze decision. We have chosen not to follow that case as an authority. Harmony between those courts going with the New York court and those going with our own seems impossible. The stand taken in the Maze case compels a conclusion directly opposite to that reached by the trial court. Counsel have not suggested any reason for limiting its effect. If plaintiff had brought his action during his

disability and had made the proof that the seventh finding establishes, that is to say, that the insured was unable to engage in any occupation "during the remainder of his lifetime," could there be any doubt about the result of such finding? The mere fact that plaintiff has now recovered to some extent, at least to the extent that he is no longer wholly incapacitated, should not, and under the doctrine of the Maze case cannot, prevent recovery.

Respondent urges that the amount of premium payments for the disability benefits is so small that it indicates that the parties had in mind bargaining for less protection than that here sought by plaintiff. We cannot perform the functions of actuaries. There is nothing in the findings nor in the stipulation of facts limiting the protection afforded by the language used in the policy. The policy was what is known as a "twenty-payment life" policy. The insured was less than 15 years of age when it was written and as such had an expectancy of more than 45 years. The total semi-annual premium was $26.06, which included semi-annual payments of $1.64 to cover the accidental death benefits and $.98 to cover the total and permanent disability benefits, thus making the total annual premium payment $52.12, out of which $3.28 was payment of the accidental death benefit and $1.96 to cover the disability benefit. It may well be that because of plaintiff's youth the actuarial computations here employed would warrant the protection which the instrument promises. Pulmonary tuberculosis has been regarded and popularly known as the "great white plague." Fortunately medical science has made great forward strides within the memory of many of us so that it is no longer considered incurable, and its ravishing effects have been made less dreadful. Aroused public interest and advancements made in medical science for its treatment have brought about much better chance of arrest and cure than was thought possible a generation ago. Undoubtedly insurance companies are advised in respect of this improvement, and as such their actuaries have presumably made premium provisions more liberal than had been their custom in the past. At any rate, we cannot assume an inadequate consideration in aid of a forced

construction and thereby deprive plaintiff of his full right of recovery.

The cases bearing upon this subject are fully discussed in the Maze opinion. Further comment in respect thereof is not deemed necessary. Perhaps it is not improper to add that the following decisions, since rendered, seem in harmony with the views here expressed. See Losnecki v. Mutual L. Ins. Co. 106 Pa. Super. Ct. 259, 161 A. 434; Plummer v. Metropolitan L. Ins. Co. 132 Me. 220, 169 A. 302; Clarkson v. New York L. Ins. Co. (D. C.) 4 F. Supp. 791.

The judgment is reversed and the trial court instructed to modify its conclusions of law so as to harmonize with the views herein expressed.