## LANDO v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.
### No. 19739–K.

District Court, N. D. California, S. D.

Sept. 6, 1935.

Daniel R. Shoemaker and Harry I. Stafford, both of San Francisco, Cal., for plaintiff.

Pillsbury, Madison & Sutro, of San Francisco, Cal., for defendant.

ST. SURE, District Judge.

Action to recover disability payments under life insurance policies.

The complaint states six causes of action, each of which alleges issuance by defendant to plaintiff of a policy of life insurance wherein, it is alleged, defendant agreed to make certain payments to plaintiff in case of his total disability, after a specified period of elapsed time, at a spec-

ified rate per month, so long as such disability should continue, and to waive all premiums due under the policy during the continuance of such disability; ·that ever since October 1, 1933, to the time of filing· suit, plaintiff has been totally and continuously unable to engage in any business or occupation or perform any work whatsoever for remuneration or profit; that while plaintiff has performed all covenants on his part to be performed, defendant has failed and refused to pay any of the respective 'sums due under the policies. A supplement to the complaint alleged total disability for a period subsequent to filing original complaint, and the prayer was for an increased amount of judgment.

The answer admitted issuance of the policies, pleaded the pertinent provisions thereof, admitted nonpayment of the sums alleged to be due, and denied that any sum was due under the terms of the policies.

The case was tried before the late Judge Kerrigan, and is now before this court for decision.

Each of the policies contains substantially the same definition of total disability, to wit: Disability shall be deemed to be total when it prevents the insured from engaging in any occupation or performing any work for compensation of financial value. It is provided in the first policy pleaded that if the insured, before attaining the age of sixty, and the policy is then in full force and effect, "shall become physically or mentally incapacitated to such an extent that he is and will be wholly and presumably permanently unable to engage in any occupation or perform any work for compensation of financial value, and furnishes due proof thereof and that such disability has then existed for sixty days," the defendant will waive premiums during the continuance of the disability and pay a specified sum per month, subject to the following conditions: "The· income shall be payable six months after receipt of proof of disability," etc.

The next two policies pleaded provide that upon due. proof that insured has become "totally and permanently disabled by bodily injury or disease" the company will pay the sums specified and waive premiums during continuance of such disability and "such total disability shall be presumed to be permanent when it is present and has existed continuously for not less than three months."

In the last three policies it is provided that "total disability is presumably permanent only (1) when due proof is received by the Society that it will presumably exist continuously during the remainder of insured's life—then from the date upon which such proof is received * * *; or (2) when it has existed continuously for three months—then from the date of the expiration of such three months."

The burden of proof is upon plaintiff to establish the fact of total and permanent disability, as those terms are used and qualified in the policies. Missouri State Life Insurance Co. v. West (C. C. A.) 67 F.(2d) 468.

The pleadings and undisputed evidence establish that plaintiff is a man approximately 36 years of age, who, between April, 1921, and June, 1930, purchased the policies sued upon; that under the policies there are provisions for ·an aggregate monthly payment of $360 for total and permanent disability duly proved; that all of the premiums due and payable by plaintiff have been duly and regularly paid, and that each of the policies was valid and subsisting at the time of the alleged disability and at the commencement of suit; that plaintiff is the owner of and engaged in a small window shade and Venetian blind business in San Francisco; that as such owner his time is largely given to soliciting business, selling and installing shades and blinds; that on December 1, 1933, he had an acute illness which necessitated medical attention; that the illness was diagnosed as "duodenal and stoma (jejunal gastric) ulcers, chronic history extending for a number of years"; that this illness was a recurrence of a duodenal ulcer in the proximal jejunum for which plaintiff underwent a surgical operation in August, 1930; that between December 1, 1933, and November 1, 1934, plaintiff was, on several occasions for periods varying from a few days to a few weeks, wholly unable to engage in any occupation or perform any work for compensation.

Plaintiff testified that his illness for which he claims disability insurance began in October, 1933; that he had an acute attack December 1, 1933; that in January, 1934, he was feeling better and the doctor suggested a little exercise or running around might take his mind off his illness, and that to try to prove to himself that he could go back to work he would, at times, "do a little house cleaning for a

day and be on my back for two or three days"; that in February he went by airplane to Los Angeles, where he remained ten days, part of the time lying in the sun; that in April he had hemorrhages, and in May was in the hospital two weeks and in June for four days; that in July he went on a short fishing trip on the third day of which he had another hemorrhage and returned home; that in August he had a blood transfusion, and thereafter his diet was changed and he gained weight and returned to work November 2d or 3d; that he has been doing partial work ever since; that from October 27, 1933, to November, 1934, he was wholly unable to do any work; that on April 2, 1934, he filed with defendant a claim for total disability supported by a medical report of his physician; that he submitted no other claim or proof than that of April 2d.

On cross-examination plaintiff admitted that while he was confined to his home early in his illness he might have signed a few checks in connection with his business; that in January, 1934, he called upon and talked with the manager of the Clift Hotel, which was then being remodeled, with respect to certain merchandise for which he was sole agent in San Francisco, and that plaintiff's employee measured the installation and subsequently mailed a bid for the job; that occasionally he drove his car and occasionally walked from his home to his place of business and took his wife to lunch; that during his disability he called upon friends and sometimes went to a show.

Corroborative evidence was furnished by plaintiff's attending physician, whose records of residence, hospital, and office visits established that plaintiff was under constant care during the entire period alleged in the complaint. Witness confirmed plaintiff's testimony as to symptoms and duration of attacks, and testified that for the first two or three months of 1934 he had advised plaintiff not to work; that from March to May plaintiff apparently improved, and witness thought plaintiff was able to do something and that it would be good for his morale, and "several times I used different influences to see if he could not try it out and attempt to work"; that on May 16th plaintiff had a severe hemorrhage, and from then until plaintiff returned to work in November, witness never thought he should work; that subsequent events proved very emphatically that he was not able to work; and that for a time during the summer it appeared to witness that plaintiff might "pass out."

It is also in evidence that the wife of plaintiff conducted his business during his disability.

■ The policies, having been prepared by the insurance company, should be construed most strongly against it (First National Bank v. Hartford Insurance Co., 95 U. S. 673, 24 L. Ed. 563; Mutual Life Insurance Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Stipcich v. Metropolitan Insurance Co., 277 U. S. 311, 48 S. Ct. 512, 72 L. Ed. 895), but the court has no power to enlarge or restrict, by artificial construction of the policies, the liabilities or benefits thereunder. Metropolitan Life Ins. Co. v. Foster (C. C. A.) 67 F.(2d) 264; Guarantee Co. v. Mechanics' Bank, 183 U. S. 402, 22 S. Ct. 124, 46 L. Ed. 253; Bergholm v. Peoria Life Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416.

■ Plaintiff rightfully contends that contracts of insurance are to be construed in accordance with the law of the state where delivery is made. Mutual Life Ins. Co. v. Johnson, 293 U. S. 335, 339, 55 S. Ct. 154, 79 L. Ed. 398, and cases cited. The California cases relied upon, however (Dietlin v. Missouri State Life Ins. Co., 126 Cal. App. 15, 14 P.(2d) 331, 15 P.(2d) 188, and Bagnall v. Travelers' Insurance Co., 111 Cal. App. 714, 296 P. 106), are, by the policies there sued upon, readily distinguishable from the contracts under consideration. So far as any cases cited by plaintiff are concerned, I see no conflict in the rulings of the Supreme or Appellate Court of California with the general law of contracts of insurance as interpreted by the federal courts.

■ A fair and impartial construction of the provisions in the policies before the court, heretofore referred to and quoted in part, impels the conclusion that the defendant company did not contemplate insurance of plaintiff against total temporary, or partial permanent disability. The language used leaves no room for doubt. While total disability does not mean that claimant must be completely helpless or bedridden (Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492), by the terms of the contracts it must be such as to prevent the insured from engaging in any occupation or performing any work for compensation of financial value. From

plaintiff's case it may well be gathered that his claim is based on misapprehension that frequently recurring total temporary disability extending over a period of time is to be construed as constituting total permanent disability. Such is not the law. Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492; United States v. Sumner (C. C. A.) 69 F.(2d) 770.

■ The evidence clearly establishes that the disability proved was not total and continuous over an elapsed time necessary under the policies to warrant the presumption of permanence. The nearest approach to such evidence was the physician's testimony that from and after May 16th the doctor never thought plaintiff was able to work, and that subsequent events emphatically proved that opinion to be correct. A presumption is not to be drawn from subsequent events. The word "presumption" connotes a belief as to the future, based upon present conditions and evidence about which there is not sufficient information to justify a conclusion with certitude. Mitchell v. Equitable Life Assurance Society, 205 N. C. 726, 172 S. E. 495. Giving full weight to the evidence, the most that could be said for it is that it would have been persuasive had it been in support of a claim for total and presumably permanent disability filed with the company at a date subsequent to July 16th; but so far as the record discloses no claim was presented, and no proof was attempted to be made by plaintiff to the company after April 2, 1934, at which time in the supporting medical report the doctor gave as his opinion that plaintiff's disability was temporary and that he was not wholly unable to engage in any gainful occupation. It is significant, too, that in response to that claim of April 2d, the company suggested that plaintiff procure and forward complete hospital report, which suggestion was never followed.

■ In each policy herein defendant's obligation to pay plaintiff for total disability rests solely upon plaintiff's furnishing due proof of the permanence of such disability. Due proof means sufficient evidence to support or produce a conclusion; adequate evidence. Bagnall v. Travelers' Ins. Co., 111 Cal. App. 714, 717, 296 P. 106; Standard Accident Ins. Co. v. Bennett (C. C. A.) 16 F.(2d) 721, 722, 49 A. L. R. 1524; Jarvis v. Northwestern Mutual Relief Ass'n, 102 Wis. 546, 78 N. W. 1089,

72 Am. St. Rep. 895. It is fairly to be inferred that in order that the contracting parties might have a mutual understanding, or a guide by which to measure permanence, which in the circumstances is necessarily speculative or conjectural, it is provided that proof of total disability having existed for the respective periods specified shall warrant a presumption that the total disability is permanent. The presumption is contractual, and upon that proof being made it is no longer rebuttable. Dietlin v. Missouri State Life Ins. Co., supra. Unless indulged in prior to events which may prove or disprove it, the presumption is a conclusion based upon evidence. Therefore the physician's testimony affords no basis upon which to predicate total and presumably permanent disability.

■ I attach no importance to the fact, earnestly stressed by defendant, that payment of premiums during the period of alleged total disability is, in effect, an admission that the disability claimed was temporary and forecloses a claim of permanent disability. Considering the state of plaintiff's health, common prudence would suggest that he take no risk of lapse of the policies by failure to pay premiums until his claim was settled with certainty and the company agreed to waive premiums. Furthermore, the blank furnished by defendant for making proof of disability has printed upon its face in large type: "Note: All premiums due on policies should be paid to keep policies from lapsing pending decision on claim."

■ To summarize: Proof of total and permanent disability having been made a condition precedent to defendant's obligation to pay disability insurance, and such proof not having been made at a time when the presumption of permanence might have been warranted and conclusive, plaintiff is precluded from recovery. Bergholm v. Peoria Life Ins. Co., supra; Orr v. Mutual Life Ins. Co. of N. Y. (C. C. A.) 64 F.(2d) 561; Cochens v. Prudential Ins. Co. (Cal. App.) 40 P.(2d) 902. Added to this is the indisputable evidence that plaintiff recovered sufficiently to resume his occupation, thus, by subsequent events, proving that his disability was temporary. Mitchell v. Equitable Life Assur. Soc., supra.

Judgment for defendant.